UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIM VASQUEZ,

                        Plaintiff,

    -v-

THE VILLAGE OF HAVERSTRAW, POLICE
OFFICER JOHN DOE 1, POLICE OFFICER
JOHN DOE 2, and POLICE OFFICERS JOHN
DOE(S) AN UNSPECIFIED AMOUNT, in their
individual and official capacities,

                       Defendants.

No. 15-CV-8845 (KMK)

OPINION & ORDER

Appearances:

Kim Vasquez
4600 Monterey Oaks Blvd., #722
Austin, TX 78749
*Pro Se Plaintiff*

Courtney F. Chenette, Esq.
Morris Duffy Alonso & Faley
New York, NY 10006
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Kim Vasquez ("Plaintiff") brings this Action against Defendants Haverstraw Police Officer(s) John Does and the Village of Haverstraw, alleging violations of his constitutional and statutory rights pursuant to 42 U.S.C. § 1983, as well as related state law claims. (*See generally* Am. Compl. (Dkt. No. 41).) Plaintiff has named the Village of Haverstraw as a Defendant, but the Village of Haverstraw does not have a police department. The Court therefore assumes that Plaintiff intended to name the Town of Haverstraw (the "Town") as a Defendant. The Town and the Haverstraw Police Officer(s) John Does

(collectively, "Defendants") have moved to dismiss Plaintiff's Amended Complaint on the grounds that Plaintiff has failed to comply with the Court's Orders, failed to effectuate service, and failed to state a claim. In the alternative, Defendants move to strike certain claims that they contend were improperly added to Plaintiff's Amended Complaint. For the reasons to follow, Defendants' Motion To Dismiss (the "Motion") is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiff's Amended Complaint and are accepted as true for the purpose of resolving the Motion. At the time of the events described herein, Plaintiff resided at 60 Broad Street, Apartment #112, Haverstraw, NY. Plaintiff presently resides at 4600 Monterey Oaks Blvd., #722, Austin, TX.

Plaintiff alleges that at around 10:00 P.M. on an unspecified date between January and February of 2015, he was sitting in the front passenger seat of a friend's parked car at 60 Broad Street in Haverstraw, New York, when a Haverstraw Police Officer ("John Doe #1") approached Plaintiff's car door with a gun drawn and pointed at Plaintiff. (*See* Am. Compl. ¶¶ 8–9.) Plaintiff contends that he held his hands up to "show he was not holding anything," at which point John Doe #1 "pulled . . . Plaintiff out of the vehicle while his arms were raised, by his arm, and threw . . . [P]laintiff to the [concrete] floor." (*Id.* ¶¶ 10–11.) Plaintiff's knee and wrist were injured as a result of being pulled out of the car. (*See id.* ¶ 20.) While face-down on the concrete, Plaintiff alleges that he was handcuffed, that John Doe #1 removed "all of the possessions in [Plaintiff's] pocket," and that Plaintiff was escorted by John Doe #1 to the back seat of a police car. (*Id.* ¶¶ 13–14.) Plaintiff's injuries were allegedly aggravated when he was placed in handcuffs. (*See id.* ¶ 21.) While Plaintiff was in the back seat of the police car, a

2

different police officer ("John Doe #2") allegedly "pulled out a gun and pointed it at [Plaintiff's] Muslim sister as she approached the officer after coming outside . . . to see what was going on." (*Id*. ¶ 15.)  Throughout the course of this incident, Plaintiff contends that "unspecified" John Doe Haverstraw police officers were "aiming guns" at him.  (*Id*. ¶ 12.)  However, "after about 10-15 [minutes], . . . Plaintiff was allowed out of the backseat of the police vehicle, and the handcuffs were removed."  (*Id*. ¶ 16.)  Plaintiff was not given a reason "as to why he endured this treatment, and was not offered any medical attention."  (*Id*. ¶ 17.)  In the aftermath of the incident, Plaintiff allegedly spent "weeks" attempting to locate some of his seized property, including his driver's license.  (*Id.* ¶ 19.)

Plaintiff attributes both physical and emotional injuries to John Doe #1's actions which "have since caused present and continual damage."  (*Id*. ¶ 22.)  Plaintiff further contends that John Doe #2's treatment of his sister has caused him "trauma and . . . consistent fears and nightmares[,] all mental and psychological."  (*Id*. ¶ 25.)  With respect to the actions of the unspecified John Does, Plaintiff again alleges "mental anguish," "trauma," and "consistent fears and nightmares" from their conduct.  (*Id*. ¶ 24.)  Plaintiff additionally contends that the Town's "fail[ure] to properly train the police officers involved" amounted to a violation of his constitutional rights and was yet another source of his injuries and trauma.  (*Id*. ¶ 27.)

Plaintiff seeks various forms of relief.  Specifically, Plaintiff seeks special damages in the amount of $20,000 from both John Doe #1 and the Town for the "loss of time and earnings with the loss of his license, and loss of work ability due to injuries."  (*Id.* ¶¶ 33–34.)  Plaintiff also seeks $2,000,000 in "general damages" from John Doe #1 for the physical and mental pain allegedly caused by John Doe #1, and an additional $2,000,000 from the Town for its liability on behalf of the offending John Doe Officers.  (*Id.* ¶¶ 35–36.)  Plaintiff seeks $100,000 from John

3

Doe #2 and each of the unspecified John Doe Officers for their roles in inflicting the alleged mental anguish and nightmares. (*See id.* ¶¶ 37–38.) Plaintiff seeks $100,000 in both "nominal" and "punitive" damages for John Doe #1's constitutional violations and unlawful conduct, respectively. (*See id.* ¶¶ 39–40.) Plaintiff additionally seeks $60,000 in punitive damages from John Doe #2 for his conduct in the alleged incident. (*See id.* ¶ 41.) Lastly, Plaintiff seeks attorney's fees and costs as well as "such other and further relief as may appear just and appropriate." (*Id.* ¶¶ 42–43.)

### B. Procedural History

On November 10, 2015, Plaintiff filed his initial Complaint. (*See* Dkt. No. 2.)[1] On December 10, 2015, this Court filed an Order of Service ("*Valentin* Order") which, inter alia, held that, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), Plaintiff's Complaint "supplie[d] sufficient information to permit the Town (or Village) of Haverstraw and its Police Department . . . to identify the members of the Haverstraw Police Department that took part in arresting Plaintiff." (Order of Service 2 (Dkt. No. 6).) The *Valentin* Order required that the Town provide the identities and addresses of the John Does to Plaintiff and the Court within 60 days, and that the Plaintiff amend his Complaint to reflect the newly identified individuals within 30 days of receipt of that information. (*See id.* at 3.)

On April 7, 2016, following Plaintiff's motion to enter a default judgment in his favor, which was denied, (*see* Dkt. No. 11), Defendants submitted a letter which identified Garry Lazar, Keith Rosario, and Edward McManus as "individuals with knowledge of the allegations set forth in Plaintiff's complaint." (Letter from Courtney F. Chenette, Esq., to Court (Apr. 7, 2016) 1

---

[1] Plaintiff's initial Complaint named Rockland County Sheriff Louis Falco as a defendant. However, Plaintiff voluntarily withdrew the claims asserted against him. (*See* Dkt. Nos. 17–18.)

4

(Dkt. No. 12).) Defendants subsequently identified Michael Canavan as an individual "with knowledge of the allegations set forth in Plaintiff's complaint." (Dkt. No. 16.)

In response to Plaintiff's assertion that Defendants had not adequately complied with the *Valentin* Order, (*see* Dkt. No. 17), the Court ordered on May 13, 2016 that Defendants explain "how they have complied with the *Valentin* Order issued by the Court." (Order 2 (Dkt. No. 18)).) On May 26, 2016, Defendants filed a letter explaining that the officers identified were, to their knowledge, the four John Does described in Plaintiff's Complaint. (*See* Dkt. No. 19.) Plaintiff filed two letters in response, dated June 1 and June 6, 2016, respectively, in which he again argued that Defendants did not provide the identities of the individuals who took part in Plaintiff's arrest. (*See* Dkt. Nos. 20–21.) On June 10, 2016, the Court memo endorsed one of Plaintiff's letters, stating that Defendants' May 26 letter complied with the Court's directives. (*See* Dkt. No. 23.) Also on June 10, 2016, Defendants filed a letter requesting that the Court hold a telephone conference to address the foregoing procedural issues. (*See* Dkt. No. 22.) On June 13, 2016, the Court issued a memo endorsement granting Defendants' request for a conference. (*See* Dkt. No. 24.) On June 30, 2016, the Court held the telephone conference and ordered Plaintiff to file an amended complaint by July 15, 2016. (*See* Dkt. (minute entry for June 30, 2016).)

On July 20, 2016, Defendants filed a letter noting Plaintiff's failure to comply with the Court's June 30 Order and requesting leave to file a premotion letter. (*See* Dkt. No. 25.) The Court's same-day memo endorsement granted Defendants' request. (*See* Dkt. No. 26.) On July 26, 2016, Defendants submitted a premotion letter explaining the grounds upon which their putative Motion To Dismiss would be based. (*See* Dkt. No. 27.) The following day, the Court granted Defendants permission to file the Motion. (*See* Dkt. No. 28.) On August 2, 2016,

5

Plaintiff filed a letter that attached a proposed amended complaint and requested pro bono counsel. (*See* Dkt. No. 31.) Once again, the proposed amended complaint failed to identify the individuals against whom Plaintiff wished to proceed. (*See id.*) The Court subsequently responded with a memo endorsement on August 10, 2016, denying Plaintiff's request for pro bono counsel without prejudice. (*See* Dkt. No. 32.) On August 11, 2016, the Court issued an Order allowing Plaintiff 20 additional days to file a proper amended complaint identifying the individuals against whom he wished to proceed, or risk facing dismissal of this Action. (*See* Order 2 (Dkt. No. 33).)

On August 22, 2016, Plaintiff submitted a letter in which he requested that the Pro Se Unit provide him with a list of capable pro bono attorneys. (*See* Dkt. No. 34.) On the following day, the Court issued a memo endorsement reiterating Defendants' sufficient compliance with their *Valentin* obligations and finding that neither the Pro Se Unit nor the Clerk of the Court were required to honor Plaintiff's request. (*See* Dkt. No. 35.) On September 1, 2016, Defendants submitted a letter noting Plaintiff's failure to comply with the August 11 Order. (*See* Dkt. No. 36.) On September 12, 2016, the Court issued a memo endorsement requiring that Plaintiff respond to Defendants' letter by September 26, 2016, or face possible dismissal of this Action. (*See* Dkt. No. 37.) On September 22, 2016, Plaintiff submitted a letter requesting a telephone conference to establish the roles of the individuals identified in the alleged incident and to provide additional information to help Plaintiff properly file his amended complaint. (*See* Dkt. No. 38.) On September 28, 2016, by which point Plaintiff had again failed to submit an amended complaint, the Court subsequently denied Plaintiff's request for a conference and gave Plaintiff "one last chance" to file his amended complaint by October 10, 2016. (*See* Dkt. No.

39.) The Court noted that the "identity of the unknown defendants can be addressed at an appropriate time." (*Id.*)

On October 11, 2016, Defendants submitted a letter advising the Court of Plaintiff's failure to comply with the September 28 Order. (*See* Dkt. No. 40.) However, the following day Plaintiff submitted his Amended Complaint. (*See* Am. Compl.) Again, the Amended Complaint failed to name any of the individual John Does. (*See id.*) On October 28, 2016, Defendants submitted a letter seeking leave to file a renewed Motion To Dismiss, (*see* Dkt. No. 44), which the Court granted the same day, (*see* Dkt. No. 45). Pursuant to the Court's October 28 memo endorsement, Defendants were to file their Motion To Dismiss by November 30, 2016, Plaintiff was to respond by December 31, 2016, and Defendants were to reply by January 15, 2017. (*See id.*) Plaintiff was not to file any additional amended complaints without the Court's permission. (*See id.*) Accordingly, Defendants filed the Motion and accompanying papers on November 30, 2016. (*See* Dkt. Nos. 46–48.) Plaintiff filed opposition papers on December 9, 2016, (*see* Dkt. No. 49), and Defendants filed a reply on January 15, 2017, (*see* Dkt. No. 50).

On January 25, 2017, Plaintiff filed a letter again requesting that Defendants be ordered to provide the names of the police officers involved in the events giving rise to this Action. (*See* Dkt. No. 51.) Defendants filed a response reiterating their compliance with the Court's orders and arguing that Plaintiff was the one who failed to comply with the Court's orders. (*See* Dkt. No. 53.) Plaintiff filed two additional letters in an attempt to explain Defendants' failure to identify the names of the John Does. (*See* Dkt Nos. 54, 56.)

II.  Discussion

A.  Failure To Comply With Court Orders

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a district court to dismiss an action if a plaintiff fails "to prosecute or to comply with . . . a court order."  Fed. R. Civ. P. 41(b); *see also Lucas v. Miles*, 84 F.3d 532, 534–35 (2d Cir. 1996) ("Rule 41(b) of the Federal Rules of Civil Procedure authorizes the district court to dismiss an action when a plaintiff fails to comply with any order of the court." (internal quotation marks omitted)).  "[A]ll litigants, including pro ses, have an obligation to comply with court orders.  When they flout that obligation they, like all litigants, must suffer the consequences of their actions."  *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1998).  However, "dismissal is a harsh remedy and is appropriate only in extreme situations."  *Lucas*, 84 F.3d at 535.  Where a plaintiff proceeds pro se, courts should be especially hesitant to dismiss his claim for procedural deficiencies.  *Id.*

In determining whether dismissal with prejudice for failure to comply with the Court's orders is warranted in this Action, the Court must weigh several factors:

> (1) the duration of the plaintiff's failures, (2) whether plaintiff had received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*Jackson v. City of New York*, 22 F.3d 71, 74 (2d Cir. 1994) (alterations in original) (internal quotation marks omitted); *Deptola v. Doe*, No. 04-CV-1379, 2005 WL 2483341, at *2 (E.D.N.Y. Oct. 7, 2005) (same).  No single factor is dispositive in deciding if dismissal is warranted.  *See Spencer v. Doe*, 139 F.3d 107, 113 (2d Cir. 1998) ("Generally, no factor is dispositive.").

Many of these factors weigh in favor of granting Defendants' Motion. However, the Court will not dismiss this Action for failure to prosecute at this time. Plaintiff is given one final opportunity to file an amended complaint specifically naming the individual defendants against whom he wishes to proceed so that those defendants can be served. As discussed above, the individuals are Garry Lazar, Keith Rosario, Edward McManus, and Michael Canavan. (*See* Dkt. Nos. 12, 16.) In an ideal world, Plaintiff would know the role that each of these individuals played in the allegedly unlawful conduct, but Defendants have been willing only to state that these individuals have "knowledge of the allegations set forth in Plaintiff's complaint." (*See* Dkt. No. 12.) One court has found that a similar disclosure satisfies *Valentin*. *See Pereyra v. Eaddy*, No. 13-CV-4760, 2015 WL 3953606, at * 2 (S.D.N.Y. June 29, 2015) (noting that the defendant identified "officers who may have been involved in an incident involving [the] plaintiff" in response to a *Valentin* order (internal quotation marks omitted)). Thus, Plaintiff is not entitled to have counsel admit to the precise roles that these individuals played in the events giving rise to this Action. That information will be gleaned during discovery, if Plaintiff otherwise states a claim.

Plaintiff *must* name Garry Lazar, Keith Rosario, Edward McManus, and Michael Canavan in the caption of an amended complaint for this Action to proceed.[2] Plaintiff need not be concerned about committing fraud on the Court by complying with this Order. The Court is fully aware that Plaintiff does not know the exact role that these individuals played in the conduct giving rise to this Action. That is why the Court is only ordering Plaintiff to name these individuals in the caption as defendants.

---

[2] Of course, if Plaintiff can, he should endeavor to name them in the body of the amended complaint as well.

This is Plaintiff's final opportunity to comply with this Court's orders. Failure to file an amended complaint naming the above identified individuals will result in the dismissal of this Action.

B. *Monell* Liability

Defendants additionally argue that Plaintiff's Amended Complaint fails to satisfy the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), such that all claims against the Town must be dismissed. (*See* Defs.' Mem. of Law in Supp. of Mot. To Dismiss 10 (Dkt. No. 48).)

A municipal defendant, in this case the Town, "cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691 (italics omitted); *see also Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat superior basis for the tort of its employee" (italics omitted)). Rather, for a plaintiff to prevail on a § 1983 claim against a municipal employer, he must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691; *see also Hunter v. City of New York*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused

> the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal quotation marks omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (internal quotation marks omitted)); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

"Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Tieman*, 2015 WL 1379652, at *12 (alteration and internal quotation marks omitted); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). There are two

circumstances that courts have expressly identified as constituting a municipal policy: "where there is an officially promulgated policy as that term is generally understood," and "where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008). "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decision maker," *id.*, but nonetheless "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted). "To prevail on this theory of municipal liability, . . . a plaintiff must prove that the custom at issue is permanent and well-settled." *Tieman*, 2015 WL 1379652, at *16.

Plaintiff has not plausibly alleged a *Monell* claim. While the Amended Complaint details an incident that Plaintiff finds objectionable, it does not plead the existence of a municipal policy or custom. "A *Monell* claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects th[e] incident to a municipal policy or practice." *Pittman v. City of New York*, No. 14-CV-4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014) (italics added); *see also Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case"). Plaintiff here offers nothing more, as the Amended Complaint is devoid of allegations to support an inference of any Town policy, practice, or custom—other than perhaps the bare assertion that the John Doe officers were not adequately trained, leaving Plaintiff short of the mark. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a

12

complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there [was] a [c]ity policy—unspoken or otherwise—that violate[d] the Federal Constitution").

Nor does Plaintiff assert the existence of a Town policymaker responsible for any unconstitutional policy relevant to the causes of action here. *See Pignone v. Village of Pelham Manor*, No. 10-CV-2589, 2014 WL 929805, at *4 (S.D.N.Y. Mar. 6, 2014) (noting that "[a] plaintiff bears the burden of establishing an official's status as a final policymaker with proof of the official's scope of employment and his role within the municipal or corporate organization"); *cf. Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 568 (S.D.N.Y. 2012) ("[The] [p]laintiff only alleges that the inspector and assistant inspector issued a notice of violation. Without more, this does not demonstrate that these individuals exercised final policymaking authority."). Because Plaintiff has failed to present sufficient allegations of any policy or custom, the Court accordingly dismisses all claims against the Town.

C. State Law Claims

In addition to the federal claims addressed above, the Amended Complaint contains a number of claims arising under New York State law—namely, assault, battery, and false imprisonment. (*See* Am. Compl. ¶ 31.) These causes of action do not present a federal question and, at the time Plaintiff initiated this Action, he, and at least one Defendant, were citizens of New York State.[3] As such, because no independent basis for federal jurisdiction exists, the

---

[3] The fact that Plaintiff currently resides in Texas does not establish diversity jurisdiction because he was a citizen of New York when the Complaint was filed. *See Bogan v. Northwestern Mut. Life Ins. Co.*, 103 F. Supp. 2d 698, 700 (S.D.N.Y. 2000) ("For diversity

Court may entertain these claims pursuant only to a theory of supplemental jurisdiction. *See Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [a plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims.").

"State claims brought under state law in federal court are subject to state procedural rules." *Coggins v. County of Nassau*, 988 F. Supp. 2d 231, 250 (E.D.N.Y. 2013), *aff'd in part*, 776 F.3d 108 (2d Cir. 2015). New York General Municipal Law § 50-i "provides that a plaintiff must commence any action against a county for 'personal injury' within one year and [90] days from the claim's accrual." *Id.* Claims for assault, battery, and false imprisonment are subject to this requirement. *See id.* at 250 n.11 (noting that personal injury includes "malicious prosecution, assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another"). Section 50-e(1) "requires that notice of claim be filed within [90] days of the incident giving rise to the claim." *Id.* at 251. These same conditions apply to suits against employees of a county or municipality. *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 396 (S.D.N.Y. 2013) (noting that "filing a [n]otice of [c]laim with a municipality is a condition precedent to commencing a tort claim against any employee of that municipality").

Plaintiff admits that he did not file a notice of claim before commencing this Action. (*See* Letter from Plaintiff to Court (Jan. 27, 2017) 1 (Dkt. No. 51).) Plaintiff asserts that his time to file a notice of claim was tolled because he had a "legal disability" during this time period. (*See id.*) However, this conclusory statement is not sufficient to warrant equitable tolling. *See Johnson v. N.Y. Police Dep't*, No. 12-CV-5423, 2012 WL 6553740, at *2 (E.D.N.Y. Dec. 14,

---

purposes, the relevant date in determining a party's domicile is the date on which the complaint was filed—actions subsequent to that date, such as changing addresses or moving residences, are inconsequential.").

2012) ("The [c]ourt finds that tolling is unwarranted because [the] plaintiff provides no specific description of his mental illness, the duration of his mental illness, or how such illness affected his ability to comply with the three-year statute of limitations."). Plaintiff's disability claim is further belied by the fact that he has been litigating this Action since November 2015 and this is the first mention of any disability. Accordingly, Plaintiff's state-law claims are dismissed for failure to file a notice of claim.

### III. Conclusion

In light of the foregoing discussion, Defendants' Motion To Dismiss is granted in part and denied in part. Plaintiff is given one final opportunity to file an amended complaint addressing the deficiencies identified above and specifically naming the individual defendants against whom he wishes to proceed so that those defendants may be served. As discussed above, the individuals are Garry Lazar, Keith Rosario, Edward McManus, and Michael Canavan. (*See* Dkt. Nos. 12, 16.) The amended complaint must be filed within 45 days from the date of this Opinion. If Plaintiff does not comply with these instructions, this Action will be dismissed *with prejudice*.

The Clerk of Court is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 46), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:  September 26, 2017
    White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

15